1    RUDY, EXELROD, ZIEFF & LOWE, LLP
     STEVEN G. ZIEFF (SBN: 84222)
2    sgz@rezlaw.com
     KENNETH J. SUGARMAN (SBN: 195059)
3    kjs@rezlaw.com
     JOHN T. MULLAN (SBN: 221149)
4    jtm@rezlaw.com
     351 California Street, Suite 700
5    San Francisco, CA  94104
     Telephone: (415) 434-9800
6    Facsimile:  (415) 434-0513
7
8    NAVARETTE LAW FIRM
     ARTHUR A. NAVARETTE (SBN: 159973)
9    navarettelaw@sbcglobal.net
     C. ZANE BECKER (SBN: 260908)
10   zane2382@gmail.com
     1625 The Alameda, Suite 700
11   San Jose, CA  95126
     Telephone: (408) 275-9500
12   Facsimile:  (408) 275-9131
13
     Attorneys for Plaintiffs
14

15              UNITED STATES DISTRICT COURT

16          FOR THE NORTHERN DISTRICT OF CALIFORNIA

17   ELAINE SABATINO, BETTY MATHIAS,        Case No. CV 09-4926 TEH
     and MARGOT REEMTS, individually and on
18   behalf of all others similarly situated,

19              Plaintiff,                  CLASS ACTION

20        v.                                **DECLARATION OF STEVEN G.
                                            ZIEFF IN SUPPORT OF MOTION
21   WEIGHT WATCHERS NORTH AMERICA,         FOR ORDER CERTIFYING
     INC.,                                  SETTLEMENT CLASS AND
22                                          PRELIMINARILY APPROVING
                Defendant.                  CLASS ACTION SETTLEMENT AND
23                                          MOTION FOR ATTORNEYS' FEES
                                            AND COSTS**
24
25                                          Date:     January 24, 2011
                                            Time:     10:00 a.m.
26                                          Place:    Hon. Thelton E. Henderson
27   _____ /               (Courtroom 12)

28

---

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

I, Steven G. Zieff, declare:

1.      I am a partner at Rudy, Exelrod, Zieff & Lowe, LLP, co-counsel for plaintiffs Elaine Sabatino, Betty Mathias, and Margot Reemts ("Plaintiffs," "Representative Plaintiffs"), in the above-captioned putative class action brought against Weight Watchers North America, Inc. ("Weight Watchers," "Defendant").  This Declaration is submitted in support of (1) Plaintiffs' Motion for Order Certifying Settlement Class and Preliminarily Approving Class Action Settlement ("Preliminary Approval Motion") relating to the proposed class action settlement entered into between plaintiffs and Weight Watchers North America, Inc. (collectively, the "Parties"), and (2) Plaintiffs' Motion for Attorneys' Fees and Costs.  I make the statements in this Declaration based on personal knowledge, except as to any matters that are stated on information and belief as indicated, and would so testify if called as a witness at trial.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Joint Stipulation of Settlement and Release executed by the Parties in this matter setting forth the terms of the proposed class action settlement before the Court on Plaintiffs' Motion for Order Preliminarily Certifying Settlement Class and Preliminarily Approving Class Action Settlement.

3.      All capitalized terms appearing in this Declaration that are not defined herein have the meanings assigned to them in the Parties' Joint Stipulation of Settlement and Release.

### Plaintiffs' Attorneys and Proposed Class Counsel

4.      Plaintiffs have been represented in this case by my firm, Rudy, Exelrod, Zieff & Lowe, LLP, and the Navarette Law Firm.  Plaintiffs seek the appointment of these two firms as Class Counsel for the proposed settlement class.  (Plaintiffs' attorneys are referred to hereinafter as "Class Counsel.")  Plaintiffs also seek my appointment as Lead Class Counsel.

### Background and Experience of Proposed Lead Class Counsel

5.      I graduated with Honors from Brown University in 1974, where I majored in public policy making.  After spending a year as a VISTA volunteer with the Legal Aid Society of Metropolitan Denver (where I worked on a variety of legal matters involving the civil and legal rights of low income and disabled persons), I entered law school at the University of California at Berkeley (Boalt Hall).  I graduated from Boalt Hall in 1978, and have specialized in class actions

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1

and other complex civil litigation, principally employment and civil rights matters.

6.     For the first seven years after I graduated from law school, I worked principally as a legal services attorney representing indigents in civil matters.  From August 1979 through May 1981, I was a Reginald Heber Smith Fellow and staff attorney with the Solano County Legal Assistance in Vallejo, California.  From May 1981 through February 1984, I was a staff attorney with the Senior Advocates Unit of the Legal Aid Society of San Mateo County, where I represented low income senior citizens living in San Mateo County.  From February 1984 until November 1986, I was the supervising attorney for the Senior Advocates Unit of the Legal Aid Society of Alameda County.

7.     Since November 1986, I have practiced with Rudy, Exelrod, Zieff & Lowe, L.L.P. (formerly Rudy & Zieff, Rudy, Exelrod, Zieff & True, LLP, and Rudy, Exelrod & Zieff, LLP), where I became a named partner in May 1989.  My practice consists primarily of representing individuals and class members in employment litigation, including wage and hour, wrongful termination, employment discrimination, and other employment-related disputes.  Attached hereto as Exhibit 2 is a true and correct copy of my resume which accurately depicts my experience and background.

8.     I was the lead trial counsel in *Pierce v. SPX Corp.*, Case No. H194779-3 (California Superior Court, Alameda County).  In that action, plaintiff Richard Pierce alleged that SPX had violated California Labor Code § 2802 and California Business and Professions Code § 17200 by failing and refusing to reimburse its sales employees for their necessary employment expenses.  Prior to class certification, the parties agreed to a settlement of the action on behalf of approximately 275 current and former employees of SPX.  Defendants agreed to the payment of $1,500,000 in settlement of the action.  The Court approved both class certification and the settlement in the action.

9.     I was the lead trial counsel in *Breaux v. Agency Rent-A-Car*, Case No. C92 2717 WHO (U.S.D.C., N.D. Cal. 1996), a class action overtime lawsuit brought under California's Labor Code seeking unpaid overtime, unlawfully compelled reimbursements, waiting-time penalties, and attorney's fees and costs on behalf of office managers and assistant office

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1    managers working for Agency Rent-A-Car in California.  This case was removed from the San

2    Mateo County Superior Court to the Federal District Court in San Francisco.  In litigating this

3    case, plaintiffs successfully moved for class certification and partial summary judgment.

4    Following these pre-trial proceedings, we prevailed on the liability phase before Judge Orrick.

5    After extensive Stage II discovery, we eventually settled the case.  Under the terms of the

6    Settlement Agreement, over $5,000,000 was disbursed to approximately 375 class claimants.  In

7    addition, Agency had to pay attorney's fees and costs pursuant to the Settlement Agreement and

8    Orders of the Court in excess of 30% of the total settlement, as well as make employer tax

9    contributions on the settlement and pay for the costs of administration.

10          10.     I was lead counsel in *Kerr v. Snap-on, Inc*., American Arbitration Association No.

11   74-160-1032-97, also known as *Kerr v. Snap-on Tools Company*, Case No. CV758116

12   (California Superior Court, Santa Clara County).  In that class arbitration, plaintiffs certified a

13   class of employees seeking unreimbursed expenses under Labor Code § 2802 and wages owed as

14   a result of defendant's "use-it-or-lose-it" vacation policy.  The case settled for a total of

15   approximately $8,400,000, and both the Superior Court and the Arbitrators approved a service

16   payment to the named Plaintiff in the amount of $15,000 and an award of attorney's fees based

17   on 33 1/3% of that recovery amount.

18          11.     I was lead counsel in *Addvensky v. Corporate Express Delivery Systems - West

19   Coast, Inc., et al*., Case No. 720794 (California Superior Court, San Diego County).  *Addvensky*

20   was certified by the San Diego Superior Court as a class action with respect to the minimum

21   wage, overtime, and Labor Code § 2802 claims brought by a class of commissioned drivers for

22   Corporate Express.  In 2000, the case settled for $9,750,000.00.  In approving the settlement, the

23   Superior Court awarded a service payment to the named Plaintiff of $15,000 and awarded

24   attorney's fees based on 33-1/3% of the total amount of the fund.

25          12.     I was lead counsel for plaintiffs in *Kung v. Food 4 Less Holdings, Inc., et al*., Case

26   No. BC 188014, *Hines v. Food 4 Less, et al*., Case No. BC 202728 (California Superior Court,

27   Los Angeles County), and *Metzler v. Food 4 Less, et al*., Case No. BC 206244 (California

28   Superior Court, Los Angeles County).  These actions were brought on behalf of Produce

3

Managers, Meat Managers, and Assistant Grocery Managers working in Food 4 Less stores in Southern California. The Court approved class certification in all three of these actions. In 2000, the first two cases settled for $3,200,000 (*Kung*) and $3,500,000 (*Hines*). *Metzler* settled in 2003 for $4,450,000. These settlements were approved by the Los Angeles Superior Court, which granted 33-1/3% of those settlement amounts to plaintiffs' counsel as a reasonable fee. The named plaintiffs in those actions were awarded between $15,000 and $20,000 service payments by the court.

13. I was lead counsel for plaintiffs in *Walker v. OfficeMax*, Case No. 00CC04470 (California Superior Court, Orange County). This action was a wage and hour overtime misclassification case brought on behalf of a class of OfficeMax store Assistant Managers. A settlement class was certified and the matter settled for $4,450,000. The settlement was approved by the Superior Court, which granted reasonable attorney's fees of 33-1/3% of the settlement amount and awarded each of the five named plaintiffs service payments of $20,000.

14. I was co-lead counsel for plaintiffs in *Miskell v. Automobile Club of Southern California*, Case No. 01CC09035 (California Superior Court, Orange County), a wage and hour overtime misclassification case brought on behalf of a class of Material Damages Claims Representatives. A settlement class was certified and the matter settled for $2,500,000. The settlement was approved by the Superior Court, which granted 30% of the settlement amount to plaintiffs' counsel as a reasonable fee and awarded one named plaintiff $20,000 and the other named plaintiff $30,000 for their services on behalf of the class.

15. I was co-lead counsel for plaintiffs in *Zuckman, et al. v. Allied Group, Inc., et al.*, Case No. 02-5800 SI (U.S.D.C., N.D. Cal.), a wage and hour overtime misclassification case brought on behalf of a class of insurance claims representatives. A settlement class was certified and the matter settled for $8,000,000. The settlement was approved by the Court, which granted 25% of the settlement amount to plaintiffs' counsel as a reasonable fee and awarded each of the two named plaintiffs $25,000 for their services on behalf of the class.

16. I served as lead counsel for plaintiffs in *Bell v. Farmers Insurance Exchange*, Case No. 774013-0 (California Superior Court, Alameda County). This action was brought on

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

4

behalf of a class of approximately 2,400 personal lines insurance claims representatives misclassified as exempt from California's overtime pay requirements.  The Superior Court approved class certification in *Bell*, denied two motions for decertification, granted summary adjudication on plaintiffs' behalf, denied defendant's summary judgment motion, and denied defendant's motion for new trial and for judgment notwithstanding the verdict.  The damages case in *Bell* was tried before a jury in a six-day trial.  The jury awarded the class $90,009,208.12 in overtime backpay damages, and the Superior Court awarded maximum prejudgment interest of up to $34,515,608, issued an injunction requiring that defendant to pay overtime to personal lines claims representatives in the future, and awarded class counsel a 25% common fund attorneys' fee award.  The judgment was substantially affirmed on appeal.  *Bell v. Farmers Ins. Exchange*, 115 Cal.App.4th 715, 9 Cal.Rptr.3d 544, 556-557 (Cal. Ct. App. 2004).  I also served as class counsel with respect to the court-approved settlement of $40,000,000 with Farmers to resolve the post-trial overtime claims of personal lines claims representatives in California for the period from June 26, 2001 through August 31, 2004.  The Court awarded service payments of $50,000 each to the named plaintiffs and 30% of the settlement amount to plaintiffs' counsel as a reasonable fee.

17.    I am lead counsel in *In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, Civil No. MDL Docket 1439A (U.S.D.C., D. Or.) ("*Farmers MDL 1439A*").  *Farmers MDL 1439A* involved class claims on behalf of employees who were misclassified as exempt from overtime pay requirements under the FLSA and the laws of seven other states (not California) and, thus, deprived of the benefits of the overtime pay protections mandated by certain state and/or federal laws.  The MDL proceedings were presided over by the Honorable Robert E. Jones, United States District Judge, after the MDL Panel sent several cases to him for consolidated pretrial proceedings.  In that matter, there were FLSA opt-ins who filed consents to sue after plaintiffs' motion for Hoffman notice was ordered by Judge Jones and there were class members in seven state law classes as the court certified classes of claims representatives under the laws of seven states.  The liability phase of the matter was tried in September, 2003 regarding the claims of approximately 2,700 insurance claims adjustors.  On

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

November 6, 2003, U.S. District Court Judge Robert E. Jones ruled in favor of the auto and

certain property claims representatives.  The court found that Farmers had acted willfully in

violating the FLSA, and that the auto and low-level property adjustors were entitled to liquidated

damages as well as actual damages.  *In re Farmers Ins. Exchange Claims Representatives'*

*Overtime Litig.*, 300 F.Supp.2d 1020 (D. Or. 2003).  During 2004 and 2005, I acted as lead

counsel when the damages phase of the case was being litigated culminating in judgments in that

matter totaling approximately $52.5 million.  Those judgments were the subject of cross appeals

before the Ninth Circuit.  On October 27, 2006, a three-judge panel of the Ninth Circuit reversed

in part and remanded the case to the District Court.  *In re Farmers Ins. Exchange Claims*

*Representatives' Overtime Litig.*, 466 F.3d 853 (9th Cir. 2006), *opinion amended at* 481 F.3d

1119 (9th Cir. 2007).  In late-2009, the parties entered into negotiations and mediation, and

ultimately agreed to resolve the case by a comprehensive settlement involving claims under

multiple state laws, as well as claims under the Fair Labor Standards Act, resulting in a

settlement of  $8,000,000.  On August 23, 2010, the court finally approved a settlement for

$8,000,000.  The court awarded $2,400,000 of the settlement amount to plaintiffs' counsel for

attorney's fees and expenses.

18.    I was co-lead counsel in *Rosenburg v. International Business Machines Corp.*,

Case No. CV 06-00430 PJH (U.S.D.C., N.D. Cal.).  This case was filed on behalf of a class of

computer technical workers with the primary duty of installing, maintaining or supporting

computer software or hardware for IBM alleging that class members were improperly classified

as exempt from the payment of overtime compensation and unlawfully denied overtime pay for

all overtime hours they worked in violation of the FLSA and the laws of multiple states,

including California.  A settlement class was certified and the matter settled for $65 million.  The

Court finally approved the settlement.  *See* 2007 WL 2043855 (N.D. Cal. July 12, 2007).

19.    I was co-lead counsel in *Giannetto v. Computer Sciences Corp.*, Case No. CV 03-

8201 (U.S.D.C., C.D. Cal.).  This case was filed on behalf of a class of technical support workers

with the primary duties of installing and/or maintaining computer software and hardware for CSC

and contends that they were improperly classified as exempt from the payment of overtime

6

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

compensation in violation of the FLSA and/or the state laws of California, Connecticut, Delaware, Maine, Massachusetts, Michigan, North Carolina, and Washington. A settlement class was certified and the matter settled for $24,000,000. The Court approved the settlement and awarded 25% of the settlement amount to plaintiffs' counsel as a reasonable fee. Mr. Giannetto was awarded $20,000 for his services on behalf of the class, and the remaining named plaintiffs each received $10,000 for their services.

20.     I was co-lead counsel in *Gerlach v. Wells Fargo & Co.*, Civil No. 05-CV-00585-CW (U.S.D.C., N.D. Cal.), a case involving class claims on behalf of employees who were misclassified as exempt from overtime pay requirements under the FLSA and California and law thus, deprived of the benefits of the overtime pay protections mandated by certain state and/or federal laws. The *Gerlach* court gave final approval to a $12,800,000 class action settlement. The court awarded 25% of the settlement amount to plaintiffs' counsel as a reasonable fee and awarded $15,000 to one of the named plaintiffs.

21.     I was lead counsel in *Chin v. Republic Indemnity Co. of America*, Case No. CGC-05-437973 (California Superior Court, San Francisco County). This was an overtime misclassification case on behalf of workers compensation insurance claims handlers. A settlement class was certified and the matter was settled for $350,000. The court approved the settlement and awarded 28.6% of the settlement amount to plaintiffs' counsel as reasonable attorney's fees. Each of the two named plaintiffs received $15,000 as payments for their services.

22.     I was co-lead counsel in *Cook v. Fisher Investments, Inc.*, Case No. CIV 453331 (California Superior Court, San Mateo County), a case involving class claims on behalf of financial service representatives who were misclassified as exempt from overtime pay requirements under the laws of California and, thus, deprived of the benefits of the overtime pay protections mandated by certain state laws. A settlement class was certified and the matter settled for a total settlement fund of $2,500,000. The court awarded attorney's fees from the common fund in the amount of 25% and service payments of $10,000 each for the three class representatives.

7

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

23.     My firm served as lead trial counsel in *Chau v. Starbucks Corp*, Case No. GIC836925 (California Superior Court, San Diego County), a tip-pooling violations class action. Following a multi-week trial in February and March 2008, the Court awarded the class more than $86,000,000 in restitution, plus interest, as well as providing for injunctive relief.  Subsequently, the court awarded attorney's fees of 20% of the common fund (including restitution and interest), and statutory attorney's fees, through July 25, 2008, of  $4,022,398 which were to be credited to the plaintiff class to offset the common fund fees paid by the class to Class Counsel. Unfortunately, the Court of Appeal reversed the judgment on appeal and issued a ruling in favor of Defendant Starbucks, and the California Supreme Court denied our petition for review.

24.     My firm is co-class counsel in *Bignardi v. Flextronics America LLC*, Case No. RG09449663 (California Superior Court, Alameda County), a class action on behalf of a class of "Area Team Leaders" who were classified as exempt from California's overtime and meal period laws.  The complaint alleged that Area Team Leaders were in fact non-exempt and that they had not been provided with meal periods, pay for missed meal periods, or overtime pay in violation of California law.  The court certified a settlement class and approved a class action settlement providing for a total settlement fund of $1,330,808.  The court awarded attorney's fees in the amount of 25% of the total settlement fund and service payments of $15,000 each for the two class representatives.

25.     I was co-class counsel in *Danieli v. International Business Machines Corp.*, Case No. 08 CV 3688 (SHS) (U.S.D.C., S.D.N.Y.), a class action for unpaid overtime on behalf of several categories of technical computer employees for a period when they had been classified as exempt from overtime pay, prior to being reclassified as non-exempt.  The complaint alleged that IBM had violated the law by failing to pay overtime during the periods when class members had been classified as exempt.  The court certified a settlement class and approved a class action settlement providing for a total settlement fund of $7,500,000.  The court awarded attorney's fees in the amount of 30% of the total settlement fund and service payments of $5,000 each for sixteen class representatives.

///

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS; PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

26. I was co-class counsel for the class in *Hoenemier v. Sun Microsystems, Inc.*, Case No. 106CV-071531 (California Superior Court, Santa Clara County), a case involving several classifications of technical writers who were classified as exempt from California law regarding overtime and meal periods. The complaint alleged that class members were in fact non-exempt and that Sun was liable for unpaid overtime wages and wages for meal periods that were not provided. The court approved a class action settlement providing for a $5,000,000 settlement fund. The court awarded attorney's fees in the amount of 33.3% of the total settlement fund and service payments of $32,500 for one of the two class representatives and $7,500 for the other class representative.

27. My firm and I were class counsel in *Lee v. Ulta Cosmetics & Fragrance, Inc.*, Case No. 09-04022 (JSW) (U.S.D.C., N.D. Cal.), a case involving "Salon Managers" who had been classified as being exempt from California overtime law during a period of time prior to when their employer changed their classification to non-exempt. The complaint alleged that Salon Managers were exempt during the period when they had been classified as nonexempt and that Ulta Cosmetics & Fragrance was liable for unpaid overtime wages for overtime worked during that period. The court has, so far, certified a settlement class and preliminarily approved a class action settlement providing for a $1,400,000 settlement fund.

28. My firm has also been co-counsel for the plaintiffs in four putative class action overtime misclassification cases involving pharmaceutical representatives, alleging federal and state law claims. Two of these cases have been concluded and two are still pending. The cases are: *Helgren v. Amgen USA Inc.*, No. CV 06-7182 GW (RZx) (U.S.D.C., C.D. Cal.); *Engel v. Serano International S.A.*, No. CV 07-00117 CW (U.S.D.C., N.D. Cal.); *Ruggeri v. Boehringer Ingelheim Pharmaceuticals*, Inc., No. 3:06-CV-1985 (JBA) (U.S.D.C., D. Conn.); and *Evancho v. Sanofi-Aventis U.S. Inc.*, Case No. 07-2266 (MLC) (U.S.D.C., D.N.J.).

29. I have also successfully litigated a wide variety of complex federal and state civil litigation matters during my professional career, including several class actions raising statutory and constitutional issues. Class action cases I have successfully prosecuted to judgment or settlement, in addition to the foregoing, include: *Pendergast v. The Lesley Foundation*, No. C-

9

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

81-3373 (U.S.D.C., N.D. Cal.), *Jones v. The Lesley Foundation*, No. C-82-0473 MHP (U.S.D.C., N.D. Cal.), and *McGlothlin v. San Mateo County Sheriff's Dept.*, No 003750 (California Superior Court, Solano County, Stipulation for Entry of Judgment, Dec. 15, 1980) (class action on behalf of all inmates of the Solano County Detention Facility challenging disciplinary practices of the Solano County Jail).

30.     In addition to being an active litigator, I have long been involved in many educational and legal groups, including the National Employment Lawyers Association, the San Francisco Trial Lawyers Association, the American Trial Lawyers Association, and California Employment Lawyers Association. I have frequently assisted the San Francisco Bar Association in its Early Settlement Program on employment cases. I have written articles for a variety of legal publications and have had articles printed and distributed in several publications, including *California Litigation* (the journal of the Litigation Section of the California State Bar), the *California Labor and Employment Law Quarterly* (the official publication of the State Bar of California Labor and Employment Law Section) and Matthew Bender's *Employment Law Reporter*. I have also prepared materials for several American Bar Association and California Continuing Education of the Bar (CEB) programs. In addition to authoring articles on a variety of employment and litigation-related subjects, I have lectured on employment law matters at meetings, conferences, and MCLE programs sponsored by the Rutter Group/the California Judge's Association, San Francisco Trial Lawyers Association, the National Employment Lawyers Association, the American Trial Lawyers Association, the American Bar Association, the California State Bar's Section on Labor and Employment, and CEB. In 2006, 2007 and 2008, served as the co-chair of the American Conference Institute's National Forum on Wage and Hour Claims and Class Actions.

31.     I received the California Lawyer Attorney of the Year ("CLAY") Award for my accomplishments in the *Bell v. Farmers Insurance Exchange* case in 2001. The March 2002 edition of California Lawyer magazine awarded CLAY awards to 26 California lawyers "whose achievements in 2001 shaped the law, the profession, and the way the law effects industry as a public." The lawyers who were selected for CLAY awards "not only won important cases in

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

2001 but also left a lasting impact on the way those who follow them will practice."

32.   I was named as one of the "Top 100" Most Influential Lawyers in California by the Daily Journal in 2002.  I am also a Fellow of the College of Labor and Employment Law, an honorary society.  I have been listed in the Best Lawyers since 2005 in America and adjudged a "Super Lawyer" by my peers for 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

33.   I am licensed to practice before all courts of the State of California, as well as in multiple federal courts.

**Class Claims and Procedural Background**

34.   On September 17, 2009, Plaintiff Elaine Sabatino filed the initial complaint in this litigation in the Superior Court of California, County of San Francisco as a putative class action and representative action on behalf of individuals employed by Defendant in California as Weight Watchers meeting "Leaders" and as "Location Coordinators."  The First Cause of Action stated claims under California Labor Code ("Labor Code") sections 1194, 1194.2, and 1197, and the applicable California Industrial Welfare Commission Wage Order ("IWC Order") for failure to pay the minimum wage for all hours worked, alleging that putative class members were paid for a set number of hours for each Weight Watchers member "meeting" they worked as a meeting "Leader," or for each week or other time period that they performed "Location Coordinator" work, and that putative class members worked additional hours – and "split shift" schedules – for which they were not paid at least the minimum wage.  The Second Cause of Action stated claims under Labor Code sections 510 and 1994 and the IWC Order for failure to pay overtime wages for overtime hours worked.  The Third Cause of Action stated a claim under Labor Code sections 203 for willful failure to pay wages due but unpaid to putative class members who separated from employment at the time of their separation in violation of Labor Code sections 201 and 202.  The Fourth Cause of Action stated a claim under Labor Code section 2802 for failure to reimburse class members for business expenses including the use of class members' personal vehicles in the course of their employment.  The Fifth Cause of Action stated a claim under Labor Code section 226 for failure to furnish class members with itemized wage statements containing all the information required under section 226(a), including the total number of hours worked, the

11

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

applicable pay rates, and the amounts of wages earned under the different applicable pay rates. The Sixth Cause of Action stated a claim for violations of California's Unfair Competition Law, sections 17200-17208 of the California Business and Professions Code, arising from the failure to pay wages and expense reimbursements.  The Seventh Cause of Action stated claims under the California Labor Code Private Attorneys General Act ("PAGA"), Labor Code sections 2699, 2699.3, and 2699.5, seeking to recover penalties for Wage Watchers' alleged violations of underlying Labor Code provisions, including violations arising under Labor Code sections 226, 510, 558, 1174, 1197, and 2802.  The Complaint sought the recovery of unpaid wages, liquidated damages, penalties, restitution, interest, and reasonable attorney's fees and costs.  (*See* Notice of Removal (Doc. 1), Ex. A.)

35.     On October 16, 2009, Weight Watchers filed its Answer to the Complaint, generally denying all of Plaintiffs' allegations and pleading numerous affirmative defenses, including that putative class members are exempt from California minimum wage and overtime laws and other regulations, and that Plaintiffs' claims were barred by various equitable doctrines. (*See* Notice of Removal (Doc. 1), Ex. B.)

36.     Also on October 16, 2009, Weight Watchers filed a Notice of Removal in the United States District Court for the Northern District of California, removing the action to federal court.  (*See* Notice of Removal (Doc. 1).)

37.     On March 8, 2010, the Parties filed a Joint Case Management Statement describing, among other things, the nature of the disputed factual and legal issues.  Among other things, the Statement reflects Weight Watchers' position that meeting Leaders are sales employees who are paid pursuant to a compensation system that compensates them for all the time they spend working for Weight Watchers relating to their meetings, and not just for a set amount of hours allotted to meetings.  (*See* Joint Case Management Statement (Doc. 19).)

38.     On July 8, 2010, Plaintiffs filed the First Amended Complaint in this case.  The First Amended Complaint named Betty Mathias and Margot Reemts as additional named Plaintiffs, removed Weight Watchers International, Inc. as a named defendant, and clarified certain of Plaintiffs' claims and allegations.  (*See* First Amended Complaint (Doc. 26).)

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

39.     From early 2010 until the date that the Parties began negotiating the proposed settlement, the Parties engaged in formal and informal discovery relating to the claims and defenses in the case, including, as described more fully below: disclosures under Federal Rule of Civil Procedure 26(a), written discovery, including extensive document and payroll data discovery, Plaintiffs' two-day deposition of Weight Watchers' "person most knowledgeable," Plaintiffs' deposition of one of Plaintiff Sabatino's former managers at Weight Watchers, and Weight Watchers' depositions of the three Plaintiffs.  During this same period, and from the inception of their engagement in this litigation, Class Counsel were otherwise engaged in investigating the claims and defenses in the litigation, including interviewing numerous Class Members.

40.     As described more fully below, on October 6, 2010, the Parties participated in a mediation that resulted in the Parties reaching agreement on the principal terms of the proposed settlement that is before the Court for preliminary approval.  Following the mediation, the Parties continued to negotiate the terms and additional details of settlement, resulting in agreement to and execution of the Joint Stipulation of Settlement and Release attached hereto as Exhibit 1 ("Joint Stipulation," "Settlement"), which sets forth the terms on which the Parties' propose to settle all claims in this case on behalf of the proposed settlement class, as well as a proposed form and manner for giving notice of the proposed settlement to Class Members.

41.     In addition to Weight Watchers meeting Leaders, and individuals who have performed hourly-paid Location Coordinator work, the Parties' proposed settlement also encompasses the Weight Watchers job position called meeting "Receptionist."  During the period of time covered by this action, many individuals who worked for Weight Watchers as Receptionists also worked as Leaders and/or as employees performing Location Coordinator work, including during the same weeks and/or pay periods in many instances, and, as addressed more fully below, Plaintiffs' investigation in this case encompassed Receptionists' work, hours, and compensation.  In view of the inclusion of the Receptionist position in the Parties' proposed settlement and settlement class, the Parties agreed that Plaintiffs would file the Second Amended Complaint which is being filed with the Court on the same date as this Motion.  (*See* Joint

13

Stipulation, Recitals ¶ 5 and § 1.23.)  The Second Amended Complaint expressly includes

allegations and claims arising from employment as Receptionists, and expands the definition of

the proposed settlement class to include the Receptionist position.

42.     On information and belief based on formal and informal discovery obtained from

Weight Watchers, approximately 4,451 individuals had satisfied the definition for class

membership as of the Weight Watchers payroll period ending May 1, 2010.  Because the class

period extends beyond May 1, 2010 – to January 8, 2011 – it is known that the class size will be

larger than 4,451, but the specific number of class members cannot be finally determined with

precision yet.  Class Members' identities can be determined from Weight Watchers' payroll and

meeting records.  (To be clear, all analyses of Weight Watchers' potential exposure that were

performed before Plaintiffs agreed to a settlement amount included projections running through

January 8, 2011.)

**Discovery and Investigation Prior to Negotiating the Settlement**

43.     Prior to negotiating and then reaching final agreement on the proposed settlement

in this case, Class Counsel performed a substantial amount of work to investigate and evaluate

the claims, defenses, legal and factual issues, and potential recovery in this case, including pre-

filing investigation and legal research and analysis, post-filing investigation and legal research

and analysis, post-filing discovery, both formal and informal, the review of Weight Watchers'

detailed mediation brief, and additional informal discovery at and following the mediation.

44.     Class Counsel's work to investigate and evaluate the claims, defenses, and issues

in this case included, but was not limited to, the following: multiple interviews and follow-up

communications with Plaintiffs regarding the training, job responsibilities, work activities, work

hours, timekeeping and reporting, supervision, compensation, and expense reimbursement of

Weight Watchers Leaders, Receptionists, and Leaders and Receptionists who perform hourly-

paid Location Coordinator work, including Weight Watchers' policies, procedures, practices, and

documents relating to all of these subjects; extensive interviews with three former Territory

Managers who were responsible for supervising and managing Leaders and Receptionists;

substantial interviews with at least 30 Class Members regarding some or all of the same subjects,

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

including extensive interviews with 15-20 Class Members for the purpose of preparing potential witness declarations; shorter conversations with at least 15 additional Class Members regarding their employment at Weight Watchers; reviewing thousands of pages of relevant or potentially relevant documents provided by Plaintiffs, and approximately 550 relevant or potentially relevant documents/sets of documents – covering more than 50,000 pages – produced by Weight Watchers, including documents reflecting Class Members' job activities, schedules, work hours, reported work hours, compensation, and expense reimbursements, and Weight Watchers' policies, procedures, and practices bearing on the same matters; reviewing relevant or potentially relevant documents provided by Class Members other than Plaintiffs; deposing Weight Watchers for two full days pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding numerous matters relating to the claims and defenses in the action; deposing one of Plaintiff Sabatino's former managers; attending and reviewing Plaintiffs' depositions; and reviewing Weight Watchers' responses to interrogatories and requests for admission.

45.    Class Counsel also reviewed selected pleadings – and, in one case, the settlement – in two other class actions (one concluded, one pending) that have been prosecuted against Weight Watchers raising somewhat similar claims (*see infra* ¶¶ 72, 97.); reviewed certain of Weight Watchers' corporate SEC filings; reviewed other complaints and disputes relating to some of Weight Watchers' pay practices at issue in the case; participated in in-person and telephonic conferences with Defendant's Counsel about the claims, defenses, and legal and factual issues in the case; and researched numerous issues of California law relating to the claims and defenses in the case.

46.    Much of the discovery, investigation, and evaluation described above related to Receptionists' work, hours, and compensation, as well as that of Leaders and hourly-paid Location Coordinators.  The vast majority of Class Members who have worked as Leaders have also worked as Receptionists during the class period (or at least at an earlier time).  Many Class Members have worked as both Leaders and Receptionists during the same pay period, and even more have worked as both Leaders and Receptionists during the same timeframe, if not during the same pay period.  Many of the training, policy, procedure, and timekeeping documents that

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

15

1  Class Counsel reviewed apply to Receptionists as well as to Leaders. Most if not all of the Class

2  Members whom Class Counsel interviewed have worked as Receptionists.

3  47.      In order to evaluate the range of possible recoveries by the Class, Plaintiffs

4  requested relevant payroll and meeting data pertaining to Leaders and Location Coordinators

5  from Weight Watchers, and Weight Watchers produced such data for the period from September

6  2005 through May 1, 2010. Class Counsel spent many hours – including many hours working

7  with a forensic accounting firm – in reviewing and analyzing the data, developing a methodology

8  for computing the Class's possible recoveries on the different claims in the case based on the

9  payroll data under different scenarios and using different assumptions about the amounts of

10  unpaid hours worked and the amount of unreimbursed mileage, and computing and reviewing

11  reasonable estimates of the Class's possible recoveries. (For the period from May 2, 2010

12  through January 8, 2011, estimated possible recoveries were based on an extrapolation from the

13  calculations performed for the period covered by the payroll data that was produced.)

14  48.      As discussed below, at the mediation, Class Counsel received additional payroll

15  information pertaining to Receptionists, which was subsequently verified by Weight Watchers.

16  At the mediation, Class Counsel calculated a reasonable estimate of what the Class might

17  possibly recover for Receptionists' claims for Labor Code section 226(e) "penalties." As

18  discussed below, I believe that the Labor Code section 226(e) claims are the strongest and most

19  valuable claims in the case, and that the amounts of Receptionists' possible recoveries for the

20  other claims in the case – other than certain PAGA penalties – are relatively less significant.

21                  **Negotiations Resulting in the Proposed Settlement**

22  49.      The Parties stipulated to participate in private mediation as their ADR process.

23  The Parties subsequently agreed to a mediation before Randall W. Wulff of Wulff Quinby

24  Sochynsky located in Oakland, California. Mr. Wulff is a well-known, highly regarded, and

25  experienced mediator. The mediation was held on October 6, 2010. There were no settlement

26  discussions prior to the mediation.

27  50.      Prior to the mediation, the Parties prepared and exchanged detailed and

28  comprehensive mediation briefs. Plaintiffs' mediation brief included a claim-by-claim

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

16

calculation of the maximum exposure Class Counsel believed that Weight Watchers conceivably faced in the event that Plaintiffs fully prevailed on all claims in the case, based on assumptions and claims regarding the number of allegedly unpaid and underpaid hours worked by the Class, the number of "split shifts" worked by the Class, the number of non-reimbursed miles driven by Class Members in the course of their employment, and the frequency of the statutory violations giving rise to claims for penalties. These calculations and subsequent calculations prepared prior to the mediation represented an optimistic view of the case without factoring in what Defendant would regard as "more reasonable" estimates of hours worked and more "realistic" discounts for the risks of adverse rulings and non-success vis-à-vis class certification, liability issues, and damages issues.

51.    Plaintiff Sabatino attended the mediation in person and Plaintiffs Mathias and Reemts were available by phone and were consulted by Class Counsel after an agreement in principle appeared to have been reached.

52.    The mediation lasted a full day. During the course of the mediation, Weight Watchers provided Class Counsel with the estimated number of additional pay periods – 144,000 – that would be covered by any settlement payment if Receptionist claims were to be added to the Class Member pay periods that would otherwise be covered by a settlement ("Receptionist pay periods"), and estimates of the additional number of individuals that would be added to the Class by including the Receptionist position in the case. Class Counsel used these estimates to calculate a reasonable estimate of the amount that the Class might possibly recover for Receptionists' claims for Labor Code section 226(e) "penalties," which possibly recovery was factored in to the Parties' negotiations. With the mediator's assistance, the Parties negotiated aggressively and at arms-length over the amount of money Weight Watchers would pay to settle all claims now pleaded in the Second Amended Complaint. The Parties also negotiated the non-claims made and non-reversionary nature of the settlement and the scope of release. At the end of the day, the Parties reached an agreement in principle that provided for Weight Watchers to make a total non-reversionary, non-claims-made settlement payment of $6.2 million, to pay for the costs and fees of a settlement administrator to administer the settlement, and to pay the

17

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

employer's share of payroll taxes on all settlement amounts paid to Class Members under the settlement as wages. The Parties executed a memorandum of understanding setting forth these and certain other terms. The agreement was made conditional on Class Counsel obtaining verification from Weight Watchers of the number of Receptionist pay periods.

53. Subsequent to the mediation, Weight Watchers provided Class Counsel with first an oral, and then a written, signed verification of the number of Receptionist pay periods worked by the Class through May 1, 2010, the date for which reliable assembled data was available, which turned out to be 115,817, and an estimated additional 17,290 pay periods for the period from May 2, 2010 through January 8, 2011, for a total estimated number of 133,107 pay periods, which is 7.6% fewer pay periods than the estimate Weight Watchers had provided to Plaintiffs at the mediation.

54. Over the course of the two months following the mediation, the Parties continued to vigorously advocate for their respective positions on matters pertaining to the settlement that had not been resolved at the mediation, and otherwise engaged in additional arms-length negotiations to reach agreement on the full terms, provisions, and conditions of the proposed settlement now set forth in the Joint Stipulation, including the language of the proposed Class notice.

**Key Terms of the Proposed Settlement**

55. **$6,200,000 Non-reversionary Settlement Fund**. The Settlement provides for Weight Watchers to make a non-reversionary settlement payment to the Class of $6,200,000 in settlement of all claims in the Litigation, including all claims for attorney's fees and costs. Class Members will not be required to submit claims or take any other affirmative action to receive their shares of the settlement proceeds. In addition to the $6,200,000 Settlement Fund, Weight Watchers will also pay the employer's share of state and federal payroll taxes (e.g., FICA, FUTA) on all amounts that are paid to Class Members for unpaid wages. Weight Watchers will also pay the costs and fees of Rust Consulting, Inc., the company that is contemplated to be employed as the Settlement Administrator, to distribute notice to the class, calculate Class Members' settlement shares, and perform additional functions related to the implementation of

18

the settlement terms.  (Joint Stipulation, § 3.1)

56.  **Attorneys' Fees and Costs**.  Under the terms of the Settlement, Class Counsel will apply to the Court for an award of reasonable attorney's fees in an amount up to 25% of the Settlement Fund, or $1,550,000, plus reimbursement of Class Counsel's costs (which are presently estimated not to exceed $65,000), which application will not be opposed by Weight Watchers.  Fees and costs awarded by the Court will be paid to Class Counsel from the Settlement Fund, and deducted from the amount of the Settlement Fund otherwise available to be distributed to Class Members.  (Joint Stipulation, § 3.2)

57.  **Service Payments to the Representative Plaintiffs**.  Under the terms of the Settlement, the Representative Plaintiffs will apply to the Court for awards of $15,000 each – for a total of $45,000 – as service payments in recognition of their services on behalf of the class, which application will not be opposed by Weight Watchers.  Service payments awarded by the Court will be paid to the Representative Plaintiffs from the Settlement Fund, and deducted from the amount of the Settlement Fund otherwise available to be distributed to Class Members.  (Joint Stipulation, § 3.3.)  As a condition of receiving these service payments, the Representative Plaintiffs will be required to execute general releases that are broader than the releases applicable to other Class Members and impose additional obligations on the Representative Plaintiffs.  (Joint Stipulation § 3.3 & Ex. C thereto.)

58.  **Payment to the California Labor and Workforce Development Agency ("LWDA")**.  The Settlement allocates $100,000 of the Settlement Fund as California Private Attorneys General Act ("PAGA") penalties being sought as part of the proposed settlement.  (See Cal. Lab. Code § 2699(l).)  (*Id.* § 3.4.)  Pursuant to California Labor Code section 2699(i), 75% of these penalties are to be distributed to the LWDA.  Accordingly, the Settlement provides for a $75,000 to be made to the LWDA from the Settlement Fund.  This amount will be deducted from the amount of the Settlement Fund otherwise available to be distributed to Class Members.  Joint Stipulation, § 3.4)

59.  **Distribution of the Net Settlement Fund to Class Members.**  Under the Settlement, the portion of the Settlement Fund remaining after the foregoing described payments

19

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

have been made to Class Counsel, the Representative Plaintiffs, and the LWDA – the Net

Settlement Fund, estimated to be $4,465,000 – will be distributed among all Class Members who

do not timely exclude themselves from the settlement class ("opt out").  Class Members do not

need to take any action to receive their settlement shares.  Funds for checks that are not cashed by

Class Members after 120 days will be paid to the Delancey Street Foundation and the California

Chapter of Share Our Strength as cy pres beneficiaries.  Pursuant to the Settlement, for tax

purposes, 30% of the amount distributed to each participating Class Member is allocated to

wages, and 70% is allocated to penalties and interest.  For amounts allocated to wages, income

taxes and the employee's share of payroll taxes will be withheld from Class Member's settlement

share payments; as noted, Weight Watchers is responsible for paying the employer's ordinary

share of payroll taxes on payments that are for wages.  Joint Stipulation, § 3.1.A.)

60.     **Plan of Distribution for Distributing the Net Settlement Fund to Participating Class Members**.  The Settlement sets forth a Plan of Distribution for distributing the Net

Settlement Fund to participating Class Members on a modified pro rata basis – described more

fully below – that allocates 75% of the Net Settlement Fund ("Leader Fund") to pay periods in

which participating Class Members worked as meeting Leaders and the remaining 25% of the

Net Settlement Fund ("Non-Leader Fund") to pay periods in which participating Class Members

worked as Receptionists and/or as employees performing hourly-paid Location Coordinator

Work.  Within the Leader Fund and Non-Leader Fund distributions, participating Class Members

recover at a higher rate for pay periods when they worked at meetings as Leaders or

Receptionists that fall with the statute of limitations period for the recovery of "penalties" for

violations of California's itemized pay statement law, section 226(a) of the California Labor

Code.  (*See* Cal. Lab. Code § 226(e) (statute providing for "penalties" for violations of § 226(a).)

Joint Stipulation, § 3.5)

61.     **Release of Claims**.  Under the terms of the Settlement, all Class Members who do

not opt out will, by operation of the entry of the Judgment and Final Approval contemplated by

the Settlement, release Weight Watchers from all claims alleged in the Second Amended

Complaint, and from any and all other claims that could have been brought based on the facts

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

20

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1    alleged in the Second Amended Complaint.  Joint Stipulation, § 4.2)

2                    **The Fairness of the Settlement Amount**

3          62.     The Settlement provides for a substantial economic recovery by the Class.  Weight

4    Watchers will make a non-reversionary Settlement Fund payment of $6,200,000, which, based on

5    certain class-size projections as set forth in the memorandum filed in support of the Preliminary

6    Approval Motion, projects out to an average in the range of $1,296 per Class Member, before

7    deductions for attorneys' fees and costs and Representative Plaintiff service payments, subject to

8    Court approval, and the PAGA payment to the California LWDA.  Based on the presently-

9    projected amount of the Net Settlement Fund, and the same class-size projections, the average

10   gross (i.e., pre-tax) payment to Class Members from the Net Settlement Fund would be in the

11   range of approximately $933.

12         63.     These are significant amounts in absolute terms, and they are also significant

13   amounts when viewed in the context of this case: Class Members are relatively low-paid,

14   primarily part-time workers, and the most significant claim in the litigation in terms of a

15   combination the strength of the liability theory, likelihood of success, and possible recovery (as

16   evaluated by Class Counsel) is the claim for "penalties" for failure to provide wage statements as

17   required by Labor Code Section 226(a).  As discussed below, the Class's claims for unpaid

18   minimum wages – which would have a large possible recovery under Plaintiffs' theory – face a

19   very significant liability risk, and the claims for PAGA penalties – which in theory could be very

20   high – are subject to  not only the liability risks to their underlying Labor Code claims, and a risk

21   of being overstated due certain calculation methodology assumptions that have been used, but

22   also the Court's statutory discretion to reduce any award of penalties to avoid an award that is

23   unjust, arbitrary, or oppressive.  Further, claims for unpaid overtime premiums are a relatively

24   less significant part of the case based on Class Counsel's investigation.

25         64.     Another significant benefit of the Settlement for the Class is that Class Members

26   are not required to submit claims or take any other affirmative action to receive their shares of the

27   settlement, which can reasonably be expected to be paid in the third quarter of 2011, barring any

28   appeal from the judgment entered on the Settlement.  Based on my experience, this will result in

                                          21

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
                                                          CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

many Class Members actually receiving money under the Settlement than would otherwise be the case.  Further, rather than reverting to Weight Watchers or being paid to a cy pres charity, money that could have been distributed to any Class Members who opt out will instead be distributed among participating Class Members.

65.     This is a difficult case in which to estimate the total amount of damages, restitution, and penalties the Class would recover in the event that the Class were to prevail on all claims and issues in the litigation because of the multiple variables involved –  e.g., number of unpaid hours worked, number of unpaid overtime hours worked, number of unpaid hours spent performing Location Coordinator work that should have been paid on an hourly basis, number of unreimbursed miles driven in personal vehicles on Weight Watchers' business, what Class Members' regular "wages" are (for purposes of computing Labor Code section 203 "waiting time" penalties), and the frequency and timing with which the various Labor Code violations occurred (for purposes of computing PAGA penalties), and the number of Class Members and Class Member work weeks and pay periods for the period from May 1, 2010 to January 8, 2011 (for which period Plaintiffs have not received payroll data from Weight Watchers).

66.     Based on information developed from Class Counsel's investigation, including Class Member interviews, and informal discovery from Weight Watchers at and before the mediation regarding the number of pay periods covered by the Settlement attributable to periods when Class Members worked only as Receptionists, and based on Class Counsel's belief about what Class Members could reasonably expected to testify to at trial, where they would be subject to cross examination, Class Counsel believes that the following assumptions are reasonable, and possibly even over-optimistic, for purposes of estimating the ballpark range of a potential recovery for the Class (before factoring in the various risk factors, discussed below, which would reasonably and logically lead to an appropriately discounted settlement value for the class claims in this case): (i) Leaders worked an average of 3.0 unpaid hours per week in weeks when they led at least one meeting ("Leader meeting week"); (ii) Leaders worked an average of 0.5 overtime hours per week in Leader meeting weeks; (iii) Leaders drove an average of 3.0 unreimbursed miles per Leader week; and (iv) Class Members worked 20% more time performing hourly-paid

22

Location Coordinator work than they reported or were paid for.  To be clear, Leaders who have spoken with Class Counsel have reported working, on average, more than 3.0 unpaid hours per week, and hourly-paid Location Coordinators have reported working, on average, more than 20% more time they report and are paid for.  These estimates were provided informally by Class Members who chose to cooperate with Class Counsel, however, and they have not been subject to cross examination, which often results in lowered estimates in my experience.  And it would certainly be argued by Defendant that a larger and more reliable survey and sample would have resulted in substantially lower estimates of hours worked.

67.     Based on the optimistic assumptions set forth above, and other methodological assumptions, I believe that a reasonable estimate of the amounts the Class could potentially recover for the Recovery Period covered by the Settlement in the event the Class were to entirely prevail on all claims, defenses, and disputed issues in the Litigation are as follows: (i) $4,042,646 in unpaid Leader minimum wages, plus $1,015,114 in interest, plus $5,057,760 in liquidated damages; (ii) $495,488 in unpaid Leader overtime premiums, plus $135,068 in interest; (iii) $256,218 in unpaid Leader "split shift" wages, plus $66,777 in interest, plus $259,902 in liquidated damages; (iv) $302,882 in unpaid Location Coordinator wages, plus $73,954 in interest, plus $294,761 in liquidated damages; (v) $841,351 in Labor Code section 203 "waiting time" penalties for unpaid wages; (vi) $275,786 for unreimbursed mileage, plus $69,120 in interest; (vii) in excess of $4,779,150 for Leaders' and Location Coordinators' claims for Labor Code section 226(e) "penalties" for section 226(a) itemized pay statement violations; (viii) $33,698,327 in PAGA penalties arising from Leaders and Location Coordinator claims (generally assuming that the underlying Labor Code violations occurred in each and every payroll period during the applicable limitations period during which Class Members worked in Covered Employment); and (ix) up to a maximum of  $2,500,000 for Receptionists' claims for Labor Code section 226(e) "penalties" for section 226(a) itemized pay statement violations. To be clear, the amounts set forth in this Paragraph represent, a potential exposure before factoring in the risks described in Paragraph 70 that would lead to a more realistic and reasonable settlement amount.  The aforementioned calculations of Weight Watchers' exposure at a stage in the case

23

prior to any legal rulings that might bear on how damages and penalties are to be calculated, and prior to any statistical sampling being performed, Class Counsel's calculations reflect an approach to presently-difficult questions about how to calculate damages and penalties that favors the Class and includes assumptions that would be and have been vigorously contested by Weight Watchers.

68.     Based on Class Counsel's discovery and other investigation – including discussions with Plaintiffs and numerous other Class Members regarding their work, compensation, and hours as Receptionists, and their observations of experiences with other Receptionists, discussions with three former Territory Managers, who supervised and managed Receptionists, and the review of many relevant documents produced by Weight Watchers in discovery – I do not believe that the addition of claims for employment as Receptionists add more than relatively marginal value to the claims in the Litigation in terms of potential monetary recovery, other than with respect to the amount of Labor Code section 226(e) "penalties" and, in theory, PAGA penalties, that the Class could recover.  The principal reason for this conclusion is that our discovery and investigation indicate that Receptionists, unlike Leaders, are generally not required to spend time outside their meeting shifts each week to prepare to lead the week's meetings, and, again unlike Leaders, are generally not required to perform banking work for Weight Watchers each week outside their meeting shifts.  Based on Class Counsel's investigation, hours spent preparing for meetings and performing banking work – which are Leader-specific responsibilities – comprise a large majority of Class Members' unpaid hours, and an even larger percentage of the unpaid percentage of the unpaid hours that they could reasonably be expected to testify to under cross examination.  In addition, because many Class Members have been simultaneously employed as Leaders and Receptionists, the potential recovery for many Class Members' claims arising from employment as Receptionists has already been subsumed in Class Counsel's calculations of the potential recovery for Leader claims, at least to some extent.  I also believe that Receptionists' claims for unpaid wages face a greater risk of not being certified as class action claims that Leaders' parallel claims.

///

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

69.     Based on the foregoing, I believe that reasonable estimates of the Class's potential recovery (including the potential recovery for both Leaders and Receptionists) by category, assuming the Class prevails on all claims, defenses, and disputed issues (without discounting for risks enumerated below in Paragraph 63) in the Litigation, are as follows: (i) $5.4 million in unpaid wages and expense reimbursements; (ii) $1.4 million in interest; (iii) $5.6 million in liquidated damages; (iv) up to $7.3 million in Labor Code section 226(e) "penalties" for itemized wage statement violations; (v) more than $35 million in PAGA penalties; and (vi) an award of reasonable attorneys' fees and costs. However, the reasonable settlement value of these claims does not come close to these estimates of potential exposure since they do not factor in the risks discussed below in Paragraph 63 or the risks of having the Plaintiffs more optimistic hours-worked assumptions being demonstrated to be inflated.

70.     Plaintiffs are confident that all of the Class's claims and prayers for relief are meritorious. At the same time, however, Plaintiffs recognize that the Class faces risks and uncertainty in moving forward with the litigation, including the following:

(a)     **Class certification**. Weight Watchers contends that the case cannot be maintained as a class action for purposes of trial. Plaintiffs' position is that all of the requirements for maintenance of a class action are satisfied, but recognize the potential that Weight Watchers' contrary position could be accepted, at least as to certain claims or defenses. For example, some of the Class's claims for unpaid wages are "off the clock" claims – i.e., claims that Class Members worked more time at their actual meetings than they recorded in the timekeeping section of Weight Watchers meeting "Tally" forms, and claims that Class Members spent more time performing hourly-paid Location Coordinator work than they recorded on their timesheets. In discovery, Weight Watchers produced written policies that have been in effect throughout the Class Period that state that employees are to record all the time they spend working at their meetings and all the time they spend performing hourly-paid Location Coordinator work. This fact creates a risk that the Court will find that Plaintiffs' off the clock claims are not the result of common corporate policies and practices and that the "predominance" and "superiority" requirements for maintaining a Rule 23(b)(3) class are therefore not satisfied.

25

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Weight Watchers also contends that Class Members' claims for unpaid wages arising from work activities that Class Members perform outside their meeting shifts do not satisfy the predominance or superiority requirements because, Weight Watchers contends, these claims too are in the nature of off the clock claims, there are no common corporate policies or practices that require Class Members to perform these activities, and there is significant variation among Class Members regarding which work activities, if any, they perform outside their meeting shifts, and how much time they spend performing them.  Plaintiffs disagree with Weight Watchers' characterization of the facts and its view of how the class certification standards apply.  Plaintiffs recognize that the Court has discretion in making the class certification decision, however, and therefore recognize that some risk exists that the Court will accept Weight Watchers' position. Weight Watchers also has raised exemption defenses that create an additional risk that the Court will side with Weight Watchers and not approve a class action for trial under Rule 23(b)(3).  For example, Weight Watchers contends that some Class Members are "outside salesmen" who are exempt from California's minimum wage, overtime, and recordkeeping requirements.  Plaintiffs disagree on the ground that Leaders are not engaged in sales or "outside" sales within the meaning of the law, let alone "primarily engaged" in outside sales, as a matter of law.  However, if the Court does not accept Plaintiffs' position, and instead requires an analysis of how much time Leaders spend working at different types of meeting locations or how much time they spend performing "sales" work, then there would be a risk that the Court could possibly find that there are individualized issues or trial management issues that defeat Rule 23(b)(3) certification. Weight Watchers also contends that IWC Wage Order No. 4 is the applicable IWC Wage Order and that many Class Members meet the requirements for that Order's commissioned sales exemption – i.e., principally involved in selling, earning more than 50% of their compensation from "commissions," and earning at least 1-1/12 times the minimum wage.  Again, Plaintiffs vehemently disagree with Weight Watchers' position, including on the grounds that Wage Order No. 4 is not the applicable IWC Wage Order, that Class Members are not principally engaged in "selling," and that certain wages that Weight Watchers' considers to be "commissions" are not actually commission wages.  Nonetheless, there is some risk that Plaintiffs will not prevail on

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700

SAN FRANCISCO, CALIFORNIA 94104

PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1    these threshold legal issues, that the exemption determination will therefore turn on Class

2    Members' individual circumstances, and that the Court will conclude that there are individual

3    issues and trial manageability issues that defeat Rule 23(b)(3) certification for trial.

4          (b)     **Minimum wage claims**. The theory at the heart of Leaders' claim for

5    unpaid minimum wages is that Leaders are not paid any compensation at all for the tasks that

6    Leaders are required to perform each week as Leaders outside their scheduled meeting shifts (i.e.,

7    the maximum hours they are scheduled to be working on location at their meetings). This theory

8    is based on the premise that Leaders' meeting pay only compensates for them the time they are

9    actually working at a meeting – i.e., that they are in effect paid on an hourly basis for their

10    meeting shifts. Weight Watchers has a written compensation policy, however, that states that

11    Leaders' meeting pay is intended to compensate them for all meeting-related work they perform,

12    and otherwise contends that Leaders (and Receptionist) are paid on a "piece rate" basis for their

13    meeting work, and not on an hourly basis. Weight Watchers contends that, in view of this fact,

14    and under Weight Watchers' view of the law, if any minimum wage violations occur, it is only in

15    pay periods when the total amount of a Leader's meeting pay for that period divided by the total

16    number of Leader hours worked is less than the applicable minimum wage. Weight Watchers

17    argues that this "averaging" application of the minimum wage requirement is supported by

18    decisional law – *see Medrano v. D'Arrigo Bros. Co. of Cal.*, 336 F.Supp.2d 1053 (N.D. Cal.

19    2004) (California Labor Code case) – pronouncements of California's Department of Labor

20    Standards Enforcement – *see, e.g.*, DLSE Interpretive Bulletin 84-3 (1984) – and the Labor Code

21    itself – *see* Cal. Lab. Code § 200 (recognizing piece rate wages); *id.* § 204 (minimum wages due

22    and payable on periodic basis). Weight Watchers also relies on the fact that it is lawful under

23    California law to compensate workers on a "piece rate" basis, rather than on an hourly-pay basis.

24    Weight Watchers argues that a principal authority upon which Plaintiffs have relied to resist the

25    "averaging" approach to the minimum wage requirement – *Armenta v. Osmose, Inc.*, 135

26    Cal.App.4th 314 (Cal. Ct. App. 2005) – is distinguishable because the compensation system in

27    *Armenta* was unambiguously an hourly-pay system, and *Armenta* was a case in which the

28    employer and employees had entered into an express written agreement under which the

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1   employees were not paid any compensation for performing certain types of activities, for which

2   the employees later claimed the right to be compensated under the California Labor Code.

3   Plaintiffs believe that they have a meritorious position, but there is a very significant risk that

4   Defendant's position will be accepted.  In the event that Defendant's averaging approach to the

5   minimum wage law is accepted, the incidence of minimum wage violations suffered by the Class

6   will fall to a very small fraction of those alleged, and the Class's potential recovery will be

7   drastically reduced accordingly.  (For example, if the averaging approach were accepted as the

8   proper application of California's minimum wage law in this case, Plaintiffs' estimate of the

9   amount of unpaid Leader minimum wages would drop from $4,042,646 to just under $304,000.)

10  There are also contested issues of law and proof regarding whether all the allegedly unpaid

11  activities Plaintiffs performed constitute compensable hours worked – e.g., time spent driving

12  from one meeting to another, time spent driving to and from the bank or other businesses to

13  perform banking-related activities for Weight Watchers.

14          (c)     **"Split shift" claims**.  Part of the Class's cause of action for unpaid

15  minimum wages is the claim that Class Members are due an hour's pay at the minimum wage for

16  each day they work a schedule that is interrupted by a period of at least thirty minutes during

17  which they are not working and for which they are not paid.  Weight Watchers contends that

18  California appellate authority – *Leighton v. Old Heidelberg, Ltd.*, 219 Cal.App.3d 1062 (Cal. Ct.

19  App. 1990) – supports an argument that employees are not entitled to split shift pay if such an

20  interrupted work schedule is one of their own choosing.  Further, the applicable IWC Wage

21  Order refers to "non-paid non-working periods *established by the employer*."  (IWC Wage Order

22  No. 2, § 2(L) (emphasis added).)  The facts in the case include that Class Members have signed

23  documents – e.g., meeting "Tally" forms for each meeting they work – in which they

24  acknowledge that the scheduling of which meetings they work is their own choice and that

25  Weight Watchers does not require them to work any particular meeting schedule.  Class

26  Counsel's investigation has otherwise confirmed that Class Members' schedules are, at least in

27  some senses, chosen by Class Members.  Though Plaintiffs believe that Weight Watchers is over-

28  reading the *Leighton* case, that *Leighton* is in any event distinguishable, and that it is Weight

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS

CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1  Watchers that "establishes" Class Members' non-paid non-working periods by setting up the

2  schedule of Weight Watchers meetings such that such periods can occur, there is a risk that must

3  be acknowledged that Weight Watchers' position will be accepted and that Class Members' split

4  shift claims could possibly be defeated as a matter of law.

5      (d)   **Itemized wage statement claims**.  The Class asserts claims for violations

6  of Labor Code section 226(a) based on Weight Watchers' failure to report all hours worked and

7  its failure to itemize all applicable pay rates and formulae and to provide a proper itemization of

8  the wages earned under the different rates and formulae.  To prevail on a claims for damages or

9  "penalties" for these violations under section 226(e) of the Labor Code, Plaintiffs must prove that

10  Weight Watchers' failure to comply with that statute was "knowing and intentional."  (Cal. Lab.

11  Code § 226(e).)  Plaintiffs believe that they can prove this element based on the facts and the

12  plain language of section 226(a).  However, in view of Weight Watchers' arguments and

13  proffered beliefs about the nature of its "piece rate" meeting-based pay system, and the lack of

14  clear decisional law concerning the application of section 226(a) to a compensation system like

15  Weight Watchers', there is a risk that the fact finder would not find Weight Watchers' violations

16  to be knowing and intentional.  It should also be pointed out that the Weight Watchers argues that

17  Class Members are not entitled to penalties because they did not in (according to Weight

18  Watchers) "suffer injury" as a result of the knowing and intentional violation of Section 226(a).

19      (e)   **Unreimbursed mileage claims**.  Plaintiffs claim that Class Members were

20  not reimbursed for the expense of using their own vehicles to drive to banks and stores for

21  Weight Watchers' benefit nor fully reimbursed for all the miles they drove in their own vehicles

22  to and from staff meetings and trainings.  There is a disputed issue regarding whether Class

23  Members are entitled to be reimbursed for those expenses that they would have incurred – i.e.,

24  the miles they would have driven – as part of their ordinary work commute; the law is not clearly

25  established in this area.  Plaintiffs believe that the Class will prevail on this issue, but there is a

26  risk that it will not.

27      (f)   **Exemption defenses**.  As discussed, Weight Watchers contends that Class

28  Members, or at least Leaders, are exempt from California's overtime requirements under the

29

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1  "outside salesmen" and commissioned sales employee exemptions.  Plaintiffs believe that these

2  exemption defenses fail as a matter of law.  There is a risk that some Class Members could be

3  found to be exempt, however.  For example, if the Court were to rule that IWC Wage Order is the

4  applicable Order, that Leaders are involved in "selling," and that the principal component of

5  Leader's meeting pay is "commission" compensation, then some Leaders could be exempt during

6  periods when they earn more than half their compensation from commissions and earn more than

7  1-1/2 times the minimum wage.  Also, if the Court were to determine that Leaders' work at

8  Weight Watchers "At Work" meetings is "outside sales" work, then Leaders who spend more

9  than 50% of their work time working at At Work meetings could be found to be exempt from

10  overtime pay requirements.  The "outside salesmen" exemption also applies to California's

11  minimum wage and recordkeeping requirements.  Thus, any Class Members who might be

12  proved to meet the "outside salesmen" exemption would also lose their claims for unpaid

13  minimum wages and recordkeeping violations.  Class Members found to be exempt would also

14  lose their claims that are derivative of these Labor Code violations – i.e., claims for waiting time

15  penalties for unpaid wages under section 203 of the Labor Code, the Labor Private Attorneys

16  General Act claims that are based on the minimum wage, overtime, and recordkeeping violations,

17  and the Unfair Competition Law claims that are based on unpaid wages.

18       (g)    **Damages**.  The Class's claims for unpaid wages and unreimbursed

19  expenses depend in part on representative Class Members testimony about their hours worked

20  ands their unreimbursed expenses for driving their own vehicles in the course of their

21  employment, and, likely, expert statistical testimony regarding that testimony.  There is a risk that

22  the fact finder will find that Class Members worked fewer hours than they claim or otherwise not

23  award the Class the full measure of damages sought for unpaid wages and unreimbursed

24  expenses.

25       (h)    **Liquidated damages**.  The Class seeks liquidated damages in the amount

26  of their unpaid minimum damages plus interest under section 1194.1(a) of the California Labor

27  Code.  In light of Weight Watchers' defenses that the minimum wage requirement as applied to

28  Class Members can be satisfied under the meeting pay averaging method discussed above, even

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1   if the Class otherwise prevails on its minimum wage claims, the Court could find that Weight

2   Watchers' minimum wage violations – or at least most of them – were committed in "good faith"

3   and that Weight Watchers had "reasonable grounds" for believing that it was not violating the

4   minimum wage law.  Under section 1194.2(b), such findings would give the Court discretion to

5   refuse to award liquidated damages or to award reduced liquidated damages.

6            (i)      **Waiting time penalties**.  To recover "waiting time" penalties under Labor

7   Code section 203, Plaintiffs must prove that Weight Watchers "willfully" failed to pay minimum

8   wages and overtime wages that were due.  (Cal. Lab. Code § 203(a).)  In view of Weight

9   Watchers' various litigation defenses, Plaintiff face a risk that they will not be able to prove that

10  Weight Watchers' violations were willful.  (*See Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th

11  1157, 1201-04 (Cal. Ct. App. 2008).)  There is also an issue as to when waiting time penalties

12  would be cut off in  a class action  - that is, whether those Class Members who were terminated

13  after the action commenced would be entitled to waiting time penalties.  *See* Cal. Lab. Code

14  § 203(a).

15           (j)      **PAGA penalties**.  The Class's claim for penalties under the California

16  Labor Code Private Attorneys General Act ("PAGA") face two categories of risk.  First, since

17  Plaintiffs' claims for PAGA penalties are predicated on Plaintiffs' claims for violations of other

18  provisions of the Labor Code, their PAGA claims are subject to all the same liability risks that

19  those other Labor Code claims face.  Second, the PAGA expressly authorizes the court to award a

20  lesser amounts of penalties than specified in the PAGA if failure to do so would result in an

21  award that is unjust, arbitrary and oppressive, or confiscatory.  Cal. Lab. Code § 2699(e)(2).

22  Thus, Plaintiffs face the risk that the Court will exercise its discretion not to award PAGA

23  penalties or to award reduced or substantially reduced penalties.  In addition, the estimate of

24  potential PAGA penalties above generally assumes that the underlying Labor Code violations

25  occurred in each and every payroll period during the applicable limitations period during which

26  Class Members worked in Covered Employment; when the facts are more fully developed for

27  trial, it may very well prove to be the case that the predicate Labor Code violations occurred less

28  frequently than that, meaning that the amount of PAGA penalties would be lower, because they

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1   are generally calculated on the basis of the number of pay periods with violations.  Finally, it

2   should also be pointed out that 75% of the PAGA recovery goes to the California LWDA.

3              (k)      **Restitution**.  Plaintiffs' Labor Code claims for unpaid wages and

4   unreimbursed expenses are subject to a three-year statute of limitations.  Thus, for their wage and

5   reimbursement claims for the period from September 17, 2005 to September 16, 2006, Plaintiffs

6   are relying on recovering restitution under California's Unfair Competition Law ("UCL"),

7   California Business and Professions Code §§ 17200-17208.  At the threshold, since Plaintiffs'

8   UCL claims are predicated on Plaintiffs' claims for violations of other provisions of the Labor

9   Code, their PAGA claims are subject to the same liability risks that those other Labor Code

10  claims face.  Second, Weight Watchers has raised numerous equitable defenses – e.g., laches,

11  unclean hands, waiver, and estoppel – which may adversely affect Plaintiffs' recovery of

12  restitution under the UCL.  If these defenses are accepted in whole or in part, there is a risk that

13  the Court would award a lesser amount of restitution than the amount to which Plaintiffs might

14  otherwise be entitled.  Plaintiffs deny that Class Members have behaved inequitably, and also

15  question whether a finding of any inequitable conduct can appropriately be used to reduce an

16  award of restitution under the UCL for unpaid wages and expense reimbursements, but Plaintiffs

17  cannot be 100% confident that their view of the facts – or how the law should be applied to the

18  facts will be accepted – and there is some appellate authority suggesting that equitable defenses

19  may be considered by courts in awarding UCL restitution.  (*See Ticconi v. Blue Shield of Cal.*

20  *Life & Health Ins. Co*., 160 Cal.App.4th 528, 544 (Cal. Ct. App. 2008).)

21             (l)      **Delay**.  Even if the Class prevails on all or some of its claims, the Class

22  faces the risk of a very long delay in ever receiving any compensation for their claims.  The

23  Litigation is already more than a year old, and the Parties have not yet reached the class-

24  certification stage.  Assuming the motion for class certification is granted, Weight Watchers

25  could file an interlocutory appeal from the class certification order, and the proceedings in the

26  district court could be stayed while that order is on appeal.  Assuming a class is certified for trial,

27  and that any appeal from the class certification order is decided in Plaintiffs' favor, additional

28  merits discovery and trial preparation could reasonably be expected to take well more than a year.

32

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Following the trial and post-trial proceedings, either Party could file appeals from any unfavorable aspect of the district court's judgment, which appeals could take years to be finally resolved.

71.     Based on my evaluation of the case, taking into consideration the prospects for class certification and favorable liability, and the applicable remedial scheme, I believe that the strongest claims in the case, and the claims that clearly have the highest value in my opinion, are the claims for "penalties" for itemize wage statement violations under Labor Code § 226(a) and (e) that arise from pay periods in which Class Members worked at meetings as Leaders or Receptionists.  Though Plaintiffs have some argument to the contrary, Defendant has a strong argument that the applicable statute of limitations for the Class's claim for section 226(e) "penalties" is one year.  (*See, e.g.*, Cal. Code Civ. P. § 340(a).)  The section 226(e) remedial scheme provides for "penalties" of $50 for the first pay period violation and $100 for subsequent pay period violations, up to a maximum of $4,000.  Based on this schedule of "penalties," the statutory maximum is reached after violations in 39 pay periods.

72.     The amount of the Settlement Fund payment also compares favorably to the amount Weight Watchers paid to settle an earlier class action case, *Ockrassa v. Weight Watchers North America, Inc.*, Case No. C 04-2873 CRB (U.S.D.C., N.D. Cal.), in which the plaintiffs were prosecuting claims for unpaid minimum and overtime wages, wages or penalties for missed meal periods, and waiting time penalties on behalf of Leaders, Receptionists, and location coordinators who worked in California, arising out of some of the same practices complained of here.[1]  The total settlement payment was $2.3 million and covered a five-year class period.  In their motion for preliminary approval, which was granted, the plaintiffs' attorneys estimated that the settlement reflected an average class member recovery of $500, *before* deductions for

---

[1]  The *Ockrassa* case was settled prior to the California Supreme Court's determination that payments required by the Labor Code for missed meal periods are wages rather than penalties.  Also, based on Class Counsel's discovery and investigation in this case, around the time the *Ockrassa* action was filed, Weight Watchers implemented and disseminated (and has continued to disseminate and enforce) policies and procedures to ensure that Leaders and Receptionists were provided with meal periods.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1  attorneys' fees and costs.  The factual information described in this Paragraph is based on Class

2  Counsel's review of the settlement agreement and motion for preliminary settlement approval in

3  *Ockrassa*.

4      73.     Based on the foregoing summary of my evaluation of the claims, defenses, and

5  disputed issues in the case, Class Counsel's reasonably-derived projection of what the Class

6  might be reasonably be expected to recover, the Court's discretion to reduce the amount of

7  certain penalties, and damages, and my experience in litigating, trying, and settling class actions

8  and putative class actions as described above, I believe that the $6.2 million Settlement Fund

9  payment provided for by the Settlement is a fair, reasonable, and adequate amount for Weight

10 Watchers to pay in settlement of all claims in the Litigation.  Considering the risks of continued

11 litigation (many of which are described in the preceding paragraph), I believe this settlement is

12 within the range of reasonableness and fair to the Class.

13                    **The Fairness of the Plan of Distribution**

14      74.     As summarized above, the Settlement sets forth a Plan of Distribution ("Plan") for

15 distributing the Net Settlement Fund among Non-Opt Out Class Members.  The Plan is intended

16 to more highly reward those claims that have significantly higher potential value in Class

17 Counsel's judgment, based on Class Counsel's review and analysis of the relative strengths, risks,

18 and potential recoveries associated with the various claims in the Litigation.

19      75.     The Plan allocates 75% of the Net Settlement Fund (the "Leader Fund") to pay

20 periods in which participating Class Members worked as meeting Leaders and the remaining

21 25% of the Net Settlement Fund (the "Non-Leader Fund") to pay periods in which participating

22 Class Members worked as Receptionists and/or as employees performing hourly-paid Location

23 Coordinator Work.  This aspect of the Plan partly reflects (1) Class Counsel's considered view

24 that the strongest claims in the case, and the claims promising the largest possible recovery for

25 the Class, are claims for Labor Code section 226(e) "penalties"[2] for violations of the itemized pay

26 ───────────
27 [2] I introduce this term – which appears in the statute – in quotes here because Plaintiffs
believe they may have an argument that the recovery at issue is actually a recovery of liquidated
damages, such that a three-year statute of limitations would apply.

28

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

statement requirements set forth in section 226(a) arising in pay periods when Class Members actually worked at one or more meetings as Leaders or Receptionists, and (2) the fact that such claims attributable to work as Leaders are estimated to give rise to a significant majority of the reasonably estimated total amount of 226(e) penalties the Class might possibly recover.  This aspect of the Plan also reflects other of Class Counsel's views and estimates relating to the relatively greater strength and larger potential value of Leaders' claims for unpaid wages and mileage reimbursements and the related claims for penalties.  In view of these factors, and the risks and uncertainties in the case more generally, I believe that the 75/25 allocation between Leader work and non-Leader is a fair and reasonable approximation of the relative worth of the claims arising from these two categories of Covered Employment under the Settlement.

76.     Within the Leader Fund and Non-Leader Fund allocations provided for by the Plan, the Plan further provides for participating Class Members to recover at higher rate for pay periods in which they have claims for a section 226(e) recovery, reflecting, again, Class Counsel's judgment about the strength of those claims and the Class's associated possible recovery.  In distributing the Leader Fund, the Plan provides for Class Members to recover at two times the rate for section 226(e) claim periods as for non-section 226(e) claim periods, recognizing – or at least reasonably presuming – that the applicable statute of limitations would be determined to be one year.

77.     In distributing the Non-Leader fund, the Plan provides for Class Members to recover at two and a half times the rate for section 226(e) claim periods in which Class Members actually worked at one or more meeting as a Receptionist as for non-section 226(e) claim periods and section 226(e) claims periods in which the Class Member only performed Location Coordinator work, and did not actually work at any meetings.

78.     These aspects of the Plan – the methods for distributing the Leader and Non-Leader funds – reflect what are fair approximations of the relative worth of the different claims at issue, recognizing that at least some substantial enhancement must be given to recoveries for periods when Class Members have section 226(e) claims.  In the case of the Non-Leader Fund, the greater enhancement reflects Class Counsel's beliefs about the even lesser relative worth of

35

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1  Receptionists' and Location Coordinators' claims for unpaid wages, *and* their view that Class

2  Members have substantially weaker claims for section 226(e) penalties in pay periods when they

3  only performed work as hourly-paid Location Coordinators.

4        79.    Finally, the Plan's provisions for distributing the Leader and Non-Leader Funds

5  set a "cap" – at 39 – on the number of section 26(e) claim periods for which Class Members can

6  recover at enhanced rates.  The reason for this cap is that the maximum amount of penalties that

7  may be recovered under section 22(e) is $4,000, and given the schedule of penalties set forth in

8  the statute, a Class Member would hit the statutory maximum after 39 pay periods with

9  violations.

10        80.    As regards what is otherwise its straight pro rata method for distributing the Net

11  Settlement Fund on the basis of the number of Qualifying Payroll Periods each Class Member

12  worked, in light of the various types of claims and potential recoveries and associated risks at

13  issue, and the great multiplicity of different Class Member work histories, I believe that the Plan

14  cannot be said to significantly prejudice or favor any segment(s) of the Class relative to any other

15  segment(s) of the Class and I believe, based on our analysis of the law and facts, that the Plan is

16  fair and reasonable to the Class.

17        81.    For the foregoing reasons, I believe that the Plan of Distribution is fair and

18  reasonable.

19        **Service Payments for the Representative Plaintiffs**

20        82.    At this stage, Plaintiffs are seeking preliminary approval for service payments of

21  $15,000 each ($45,000 total) in recognition of their services and risks on behalf of the Class.  As

22  part of Plaintiffs' additional submission prior to the final fairness hearing, Plaintiffs will submit a

23  declaration from each of the Representative Plaintiffs describing her services on behalf of the

24  Class, including estimates of her time spent on the case.

25        83.    Based partly on my personal knowledge and partly on information and belief,

26  based on discussions with my associate Kenneth J. Sugarman, I can state that each of the

27  Representative Plaintiffs – Elaine Sabatino, Betty Mathias, and Margot Reemts – has performed

28  substantial services on behalf of the Class and has spent a significant number of hours in so

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

36

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1    doing.  The activities in which each Representative Plaintiff has engaged include the following:

2    extensive communications and consultations with Class Counsel regarding the facts related to the

3    claims; providing Class Counsel with valuable information about potential witnesses, including

4    other Class Members; reviewing the initial complaint (Plaintiff Sabatino); assisting Class

5    Counsel to prepare Rule 26 disclosures; spending hours looking for (and in some cases printing

6    or organizing into electronic files) documents responsive to Weight Watchers' discovery

7    requests, discussing Weight Watchers' documents requests with Class Counsel, and ultimately

8    providing thousands of pages of documents; traveling to San Francisco from other parts of

9    California to attend their depositions; spending almost a full day each preparing for their

10   depositions; sitting for full-day depositions in Palo Alto; attending the mediation (Plaintiff

11   Sabatino); and being available by phone during the mediation (Plaintiffs Mathias and Reemts).

12   All three Plaintiffs were advised and consulted throughout the progress of the litigation and

13   during the settlement process.  All three Plaintiffs made clear that they were prepared to sacrifice

14   their time to attend the trial and testify as witnesses and to perform other burdensome tasks that

15   might be required of them.  Plaintiffs stepped forward to publicly represent the class as named

16   representatives, despite the potential risks and stigma of suing their current employer (Plaintiffs

17   Mathias and Reemts) or former employer (Plaintiff Sabatino).  In view of the foregoing, and

18   based on my experience in numerous other comparable class actions as set forth above, I believe

19   it is just and reasonable that Plaintiffs Sabatino, Mathias, and Reemts should receive relatively

20   modest payments of $15,000 each for their services on behalf of the class.

21                    **Attorneys' fees and Costs**

22          84.    As of December 9, 2010, Rudy, Exelrod, Zieff & Lowe, LLP had spent more than

23   1,037 hours investigating, litigating and settling this case.

24          85.    Since undertaking the representation of Plaintiffs in this action as lead counsel, my

25   firm has devoted substantial resources to, among other things, extensively investigating the

26   matter, drafting the complaint and amended complaints, drafting case management statements

27   and stipulations and proposed orders, negotiating the production of a class list, preparing Rule 26

28   disclosures and supplemental disclosures, propounding and responding to discovery, preparing

37

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

Plaintiffs for their depositions and appearing at their depositions, meeting and conferring with Defendant's Counsel, determining damages, drafting a mediation brief, negotiating the settlement, drafting and negotiating the Joint Stipulation of Settlement and Release and class notice, drafting and editing papers relating to seeking preliminary approval of the settlement, and communicating with Class Members.

86.     My firm made every effort to litigate this action in an efficient and cost-effective manner by reducing duplication of effort and assigning work so as to be carried out in an efficient and cost effective manner.  By nature, contingency arrangements cause counsel to be cognizant of the amount of time required by tasks on the case.  Efficiency and economy are a necessary practice in such cases, as results, and not hours billed, is the focus.

87.     My role in this action has been to oversee the litigation, to help to develop the strategy, and to take a leading role in negotiating the settlement.  My current billing rate is $775 per hour.  The majority of tasks in investigating, litigating and settling this action have been assigned to Kenneth J. Sugarman, an associate in my office with extensive experience litigating class actions for unpaid wages and related claims.  Mr. Sugarman is a 1997 graduate of Yale Law School with more than 12 years of legal experience, including almost 8-1/2 years at my firm.  Mr. Sugarman's billing rate of $485 per hour.  Another associate in my office, John T. Mullan, has also performed some work in the case, and I expect that he will be taking a larger role in the case in the future.  Mr. Mullan is 2002 graduate of Berkeley Law School (Boalt) with more than 8 years of legal experience at my firm.  Mr. Mullan's billing rate of $450 per hour.  Tasks were also assigned to our firm paralegal, Lynette Ridder, who had approximately eight years of experience with our firm as the firm's paralegal, prior to her departure from the firm in November 2010.  Ms. Ridder's hourly rate was $150 per hour.  These rates are my firm's current billing rates for 2010.  My firm also retained the services of a contract attorney, Enrique Martinez, to assist with interviewing Class Members and preparing Class Member witness declarations.  Enrique Martinez is a 1999 graduate of UCLA Law School and a 1995 graduate of Yale University (undergraduate) who worked on a contract basis with our law firm on this case. He has worked on class action lawsuits, primarily in the field of employment law, for more than

38

ten years.  Tanya Tilghman is a paralegal, who worked with our firm.  M. Adrianne De Castro was an associate who worked with our firm and who is a 2005 graduate of Berkeley Law.

88.     I have personal knowledge of the hourly rates charged by other attorneys with comparable experience to mine(including the hourly rates of other attorneys in the San Francisco Bay Area who handle complex wage and hour class actions), as well as to the attorneys within the firm who worked on this matter.  Based on that information, I believe that my rate of $775 per hour is consistent with and well within the market rates in San Francisco for partners with comparable expertise, experience and qualifications in complex wage and hour class actions.  I charge $775 per hour to those clients whom I bill on an hourly basis.  Based on the information I have, I believe that the rates charged by Rudy, Exelrod, Zieff & Lowe, LLP for its partner and non-partner attorney time are reasonable and appropriate fees for San Francisco attorneys with comparable expertise, experience and qualifications and consistent with Bay Area market rates.

89.     It is my firm's practice to maintain contemporaneous time records setting forth the amount of time spent (at a minimum increment of one-tenth of an hour) on each task and each case, and with descriptions regarding the actual task involved.  My usual practice, and the usual practice of the other attorneys in my firm, is to record only those hours that my firm would customarily bill to a client paying on an hourly basis.  While we also exercised billing judgment after recording my time in this case, and the time of other attorneys in my office (thus eliminating some of the time that had been originally recorded as an exercise of reasonable billing judgment), I also exercised billing judgment before recording my time, because I routinely did not enter time that I thought might be duplicative, and I reduced time for work that I thought may have been inefficient.

90.     The contemporaneously maintained logs of time expended by Rudy, Exelrod, Zieff & Lowe, LLP ("REZL") attorneys and support staff in my firm indicate a total of at least 1,037 hours expended through December 9, 2010 attributable to this matter (that is, after reductions made in the exercise of billing judgment).  REZL's lodestar based on these hours expended through December 9, 2010 amounts to at least $449,453.50.  Attached hereto as Exhibit 3 is a true and correct summary by individual of the time, billing rate, and lodestar for work on

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

39

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

this matter through approximately 4:00 p.m. on December 9, 2010, not including 12.4 additional

hours worked by Kenneth J. Sugarman ($6,014 additional lodestar not reflected in Exhibit 3) and

1.8 additional hours worked by Steven G. Zieff ($1,395 additional lodestar not reflected in

Exhibit 3) worked on December 9, 2010 and the early morning hours of December 10, 2010 after

the Exhibit 3 was generated.  Additional time has been expended since then and the early

morning of December 10, 2010.

91.     The following chart sets forth my firm's hours on this case through December 9,

2010 at approximately 4:00 p.m. as reduced in the exercise of billing judgment.  The chart states

the name of each attorney who worked on the case for whom we are seeking compensation, the

number of hours worked by each such individual after billing judgment reduction, and the current

hourly rate for each individual.

| Last | First | Title | Units | Hourly Rate | Total |
|------|-------|-------|-------|-------------|-------|
| De Castro | M. Adrianne | Associate | 22.10 | $325 | $7,182.50 |
| Martinez | Enrique | Independent Contractor Attorney | 65.10 | $440 | $28,644.00 |
| Mullan | John | Associate | 2.70 | $410 | $1,107.00 |
| Ridder | Lynette | Paralegal | 128.70 | $150 | $19,305.00 |
| Sugarman | Kenneth. | Associate | 700.85 | $460 | $322,391.00 |
| Tilghman | Tanya | Paralegal | 27.00 | $150 | $4,050.00 |
| Zieff | Steven | Partner | 76.60 | $775 | $59,365.00 |
| | | **Total Hours** | **1,023.05** | **Total Amount** | **$442,044.50** |

92.     Hours spent by REZL reported herein are only through the early morning of

December 10, 2010.  Additional hours of attorney time have been incurred since that time and

will continue to be incurred in order to secure final approval of the settlement, effectuate and

monitor the settlement and the carrying out of its terms, and communicate with Class Members.

Prior to the hearing on the Motion for Attorneys' Fees and Costs, REZL will provide the Court

with supplemental information regarding the firm's then-current hours and lodestar.

93.     My firm took this case on a contingency basis, without any assurance that we

would be paid any fees or reimbursed any costs for our efforts or expenditures.  At the outset, we

had no way of anticipating the course taken by this case.  In spite of this, we took the case on

with every intent of expending all necessary hours and out-of-pocket expenses to ensure

vindication of the class.  We have done our best to resolve this case as efficiently and favorably

for the Class as possible and in doing so availed ourselves of the extensive experience and

expertise that we have developed over the years in handling other class actions for unpaid wages

and related claims.  In other comparable wage and hour class actions, it is customary for courts to

approve payment of attorneys' fees based on a percentage of the common fund.  As described

above, in a number of comparable wage and hour class actions my firm has obtained orders

providing for payment of attorneys' fees in the amount of 25% or higher of the common fund for

class counsel.  (*See infra*, Paragraphs 16-17, 19-22, and 24-26.)  Here, Class Counsel seek an

order approving an award of attorneys fees in the amount of 25% of the Settlement Fund obtained

for the Class.  I believe that this is fair and reasonable.

94.     My firm maintains all records regarding costs expended on each case.  I have

reviewed the records of costs expended in this matter.  According to our records, Rudy, Exelrod,

Zieff & Lowe, LLP has advanced approximately $59,348.25 through December 9, 2010 in

connection with the pursuit of the claims in this case, including copying costs, half of the

mediator's fee, costs for a Notice Administrator to send an initial notice mailing to many of the

Class Members, the fees for a consulting forensic accounting expert, filing fees, costs of

electronic legal research, postage, deposition costs, travel expenses, and other expenses.

Attached hereto as Exhibit 4 is a true and correct summary of the costs expended on this matter

by my firm through December 9, 2010.

95.     I anticipate that total costs expended by Class Counsel through the final

conclusion of this matter will be approximately $65,000, though perhaps less.  Accordingly,

Plaintiffs' Motion for Attorneys' Fees and Costs requests an order awarding Class Counsel a

payment to reimburse Class Counsel for all litigation expenses in an amount not to exceed

$65,000.  Prior to the hearing on the Motion for Attorneys' Fees and Costs, Class Counsel will

provide the Court with a then-current report of Class Counsel's expenses.  If Class Counsel's

then-current or projected expenses are less than $65,000, Class Counsel will request that lesser

amount, rather than $65,000, as the amount of the requested award for reimbursement of costs.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

41

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

96.     My firm and the Navarette Law Firm entered into a written Co-Counsel Agreement pertaining to this action.  The Agreement provides that Rudy, Exelrod, Zieff & Lowe will be lead counsel in this action.  The Agreement provides that in the event the Court makes a common fund fee award or allocation, 90% of the award will be paid to my firm and 10% will be paid to the Navarette Law Firm.  The Agreement provides that in the event the Court awards fees on a lodestar basis, each firm shall be awarded fees as the Court awards as are based on the firms' respective lodestar (its reasonable and customary hourly rates times reasonable hours incurred). We provided each of the Plaintiffs with a copy of the Co-Counsel Agreement for her review and approval.  Each Plaintiff's signed retainer agreement provides her attestation that she saw and approved the Co-Counsel Agreement.  A true and correct copy of the C-Counsel Agreement is attached hereto as Exhibit 5.

## Additional Information

97.     Earlier in this Declaration I mentioned another class action case that is pending against Weight Watchers.  (*Supra* ¶45.)  That case is *Hanson-Kelly  v. Weight Watchers International, Inc.*, No. 1:10-cv-65, United States District Court, Middle District of North Carolina.  The *Hanson-Kelly* action was commenced on January 25, 2010, more than four months after Plaintiff Sabatino commenced the instant case.  On information and belief, based on my associate Kenneth Sugarman's review of the complaint in that action, the *Hanson-Kelly* plaintiff(s) is not prosecuting any California law claims.  The Complaint and First Amended Complaint plead a claim for an opt-in collective action arising under the federal Fair Labor Standards Act ("FLSA"), but these pleadings are unclear as to whether the FLSA collective action is intended to encompass claims arising from employment outside the state of North Carolina; the collective action allegations are not expressly limited to employees employed in North Carolina.  Based on my office's review of the docket report in *Hanson-Kelly*, there has been no motion filed for certification or other approval of an FLSA collective action, and the only persons to opt in to such an action have been the two named plaintiffs (one of whom was subsequently dismissed voluntarily), who both worked for Weight Watchers in  North Carolina.  I

42

do not think the pendency of the *Hanson-Kelly* action is relevant in any way to the question of whether the Preliminary Approval Motion should be granted.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.  Executed this 10th day of December, 2010 at San Francisco, California.

*/s Steven G. Zieff*
STEVEN G. ZIEFF

DECLARATION OF STEVEN G. ZIEFF ISO MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS;
PRELIMINARILY APPROVING SETTLEMENT AND ATTORNEYS' FEES AND COSTS
CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com